NEW ORLEANS & PAC. RY. Co. *et al.* v. UNION TRUST Co. *et al.*

(*Circuit Court, E. D. Louisiana.*   March 21, 1890.)

MORTGAGE—AFTER-ACQUIRED PROPERTY—RAILROAD COMPANIES.
    A railroad company mortgaged the whole of its line in the state of Louisiana; "also all real and personal estate within the state owned by the company at the date of this mortgage, or which may be acquired by it thereafter, appurtenant or necessary for the operation of said line."   The special authority to mortgage given to the company by its charter did not authorize it to mortgage an after-acquired land grant.   Rev. Civil Code La. art. 3308, provides that "future property can never be the subject of conventional mortgage."   *Held,* that said mortgage did not affect land thereafter granted to the company to aid in the construction of the road.

In Equity.   Bill to remove cloud from title.
*Howe & Prentiss,* for complainant.
*Frank N. Butler,* for Union Trust Co.

PARDEE, J.   The question presented in this case is whether a mortgage granted by the New Orleans, Baton Rouge & Vicksburg Railroad Company, one of the complainants herein, on the 1st day of October, 1870, to secure an issue of bonds made by said company, bears upon and affects the lands thereafter, upon the 3d of March, 1871, granted by the congress of the United States to the said New Orleans, Baton Rouge & Vicksburg Railroad Company and its assigns, to aid in the construction of a railroad in New Orleans, and in connection with the Texas & Pacific Railroad at its eastern terminus at Shreveport, La.   See chapter 122, Acts Cong. 1871.   In said act of mortgage the property claimed to be hypothecated and affected thereby covers the whole of the main line of the railroad of said company within the state of Louisiana, particularly describing and setting forth the same, "together with the rights of way, road-beds, rails, depots, stations, shops, buildings, machinery, tools, engines, cars, tenders, and other rolling stock; also, all real and personal estate within the state of Louisiana owned by the said company at the date of this mortgage, or which may be acquired by it thereafter, appurtenant to, or necessary for the operation of, said main line of said

railroad, or any of said branches connected with said main line, or to be connected therewith; also, all other property, real and personal, of every kind and description whatsoever, and wheresoever situated, in the state of Louisiana, which is now owned, or which shall hereafter be acquired, by said company, and which shall be appurtenant to, or necessary for the operation of, said main line of railroad, or any of said branches; also, the tenements, hereditaments, and appurtenances thereunto belonging, and all of the estate, right, title, and interest, legal and equitable, of the said company, and its successors and assigns therein, together with the corporate franchises and privileges of said company at any time granted or to be granted by the state of Louisiana relative to the construction, operation, and use of said railroad within said state."

The general law of Louisiana is simple and well settled. "Mortgages are strictly construed, and will not be extended by implication." *Succession of De Armas*, 3 Rob. (La.) 342. "To render a conventional mortgage valid, it is necessary that the act establishing it shall state precisely the nature and situation of each of the immovables, on which the mortgage is granted." Rev. Civil Code, art. 3306. "A debtor may mortgage his whole present property, or only a specific part; but in either case it ought to be expressly enumerated, as is said in the preceding article." Id. art. 3307. "Future property can never be the subject of conventional mortgage." Id. art. 3308. "The conventional mortgage, when once established on an immovable, includes all the improvements which it may afterwards receive." Id. art. 3310. In *State* v. *Railway Co.*, 3 Rob. (La.) 513, the supreme court of Louisiana said, "It is clear that future property can never be the subject of conventional mortgage," and declared that a railway mortgage could not exist, or be made in derogation of the general hypothecary system of the Civil Code, without special legislative authority. Section 2396 of the Revised Statutes of 1870 provides that "for the construction or repairs of any railroad" the company "may issue bonds * * * secured by mortgage upon the franchises, and all the property," of the company. Section 2427 provides that "any railroad company established under the laws of this state may, to secure the payment of any obligation contracted by said company for the construction of the road, mortgage their road in whole and in part; and such mortgage, if made of the entire road, shall bear upon the entire road, though the same be not completed at the time the mortgage was made; and such mortgage may also be made to bind the appurtenances of said road, its warehouses, depots, water stations, locomotives, etc." In the case of *Bell* v. *Railroad Co.*, 34 La. Ann. 785, the question was considered as to the power of a railroad company to mortgage, and the extent of the mortgage granted; and it was there held that "the mortgage of a railroad, its lands, property, franchises, rights, and appurtenances, with the buildings, structures, and improvements, comprehends not only the property *in esse* forming part of the organism or structural arrangements,' or the machinery and apparatus for the construction, maintenance, or operations of the railroad, whether movable or immovable, but also such as shall be obtained or added during the existence of the debt." From

these statutes and decisions of the court, it seems clear that under the general law of Louisiana the only after-acquired property that can be covered by a railroad mortgage is the after-acquired property forming part of the organism of the railroad, or, in other words, forming a part of the railroad and its appurtenances. The charter of the New Orleans, Baton Rouge & Vicksburg Railroad Company, as existing in 1868 and 1870, did not contemplate any land grant from the United States, nor ·confer any special authority to accept, hold, or deal with such a grant; and the power to make a first mortgage contains no reference to such a grant, but, on the contrary, seems to exclude the idea of any mortgage on such lands, if granted. The power to mortgage, and the lien of the mortgage, as contained in sections 14 and 16 of the Act of 1869, are as follows: Authority is given to "mortgage its railroads, its corporate franchises, and any of its real and personal property, or any part or portion of the same. * * * Said first mortgage bonds, and the mortgage securing the same, shall be a prior lien only to the extent of twelve thousand five hundred dollars per mile upon each and every mile of the aforesaid main line of railroad within the state of Louisiana, including all the right of way, road-bed, rails, depots, stations, shops, buildings, machinery, tools, engines, cars, and real and personal estate, within the state of Louisiana, appurtenant to or necessary for the operation of said main line of railroad, owned by the company at the date of said mortgage, or which may be acquired by it thereafter; and on the corporate franchises and privileges of said company granted by the state of Louisiana relative to the construction, operation, and use of said main line of said railroad within the state of Louisiana." By various provisions in the act, second mortgage bonds are to be guarantied by the state; and, in this view, it is obvious why the power to make a first mortgage, and the lien thereof, were restricted. The second mortgage was to secure the state; and, as a matter of agreement and public policy, the first mortgage was not only limited in amount, but its lien was restricted to the property above described. It appears that after the granting of the aforesaid mortgage, in 1870, the land grant was made, in 1871; and that in December, 1872, an act of the legislature of Louisiana was passed, referring to the grant, conferring, by necessary implication, the right to accept and deal with it, providing for the giving up of the scheme of the second mortgage bonds guarantied by the state under the act of 1869, and authorizing first mortgage bonds at the rate of $30,000 per mile, to be a first lien and privilege on the real and personal property of said company, and all lands acquired by act of congress or otherwise. It therefore seems clear that there was no specific legislative authority anterior to the mortgage of 1870, nor afterwards by ratifying legislation, for the New Orleans, Baton Rouge & Vicksburg Railroad Company, in 1870, to mortgage after-acquired land not appurtenant to the railroad. The act of mortgage, in describing the property to be affected, after enumerating the main line and branches of the road, continues as follows:

"Together with the right of way, road-bed, rails, depots, stations, shops, buildings, machinery, engines, cars, tenders, and other rolling stock; also, all

real and personal estate within the state of Louisiana owned by the said company at the date of this mortgage, or which may be acquired by it thereafter, appurtenant to, or necessary for the operation of, said main line of said railroad, or any of said branches connected with the said main line, or to be connected therewith; also, all other property, real and personal, of every kind and description whatsoever, and wheresoever situated, in the state of Louisiana, which is now owned, or which shall hereafter be acquired, by the said company, and which shall be appurtenant to, or necessary or used for the operation of, said main line of railroad, or any part of said branches; also, the tenements, hereditaments, and appurtenances thereunto belonging, and all of the estate, right, title, and interest, legal and equitable, of the said company and its successors and assigns therein, together with the corporate franchises and privileges of said company at any time granted, or to be granted, by the state of Louisiana, relative to the construction, operation, and use of said railroad within said state."

This description is very full, and a cursory examination of it might convey the idea that thereby the railroad company intended to mortgage all the property it had, or ever should acquire; but a careful examination will show very plainly that, although many words are used, really nothing was intended to be mortgaged but the railroad and its appurtenances then owned, or thereafter to be acquired:

"Together with the corporate franchises and privileges of said company at any time granted, or to be granted, by the state of Louisiana, relative to the construction, operation, and use of said railroad within said state."

I am satisfied that a land grant for the purpose of aiding in the construction of a railroad cannot be considered an appurtenant of said railroad, and that the language of the mortgage in question, carefully considered, was not intended to cover the after-acquired land grant. As the general law of Louisiana does not authorize a mortgage of an after-acquired land grant, as the special authority to mortgage granted to the New Orleans, Baton Rouge & Vicksburg Railroad Company did not contemplate or authorize the mortgage of such after-acquired grant, and as the language of the mortgage itself does not describe nor include any such after-acquired grant, it is clear to me that the mortgage in question in this case does not and cannot be made to affect, by way of lien or otherwise, the thereafter acquired land grant of 1871. It follows that the complainant should have a decree granting the relief prayed for in the bill.